EVAN SPECK,

v.

THE TOWN OF CHARLESTOWN and
THE CHARLESTOWN POLICE
DEPARTMENT, by and through Chief of
Police, Jeffrey Allen,

C.A. No. 16-508 S

# DEFENDANTS' BRIEF REGARDING CERTAIN ELEMENTS FOR PRELIMINARY INJUNCTION

## I. INTRODUCTION

At the September 14, 2016 chambers conference regarding Plaintiff's Temporary Restraining Order request, the court scheduled simultaneous briefs to be filed on October 6, 2016 on two specific issues. Counsel have stipulated to the issues as follows:

1) Whether the irreparable harm element is met by the interruption or termination of medical benefits in the circumstances of this case; and

2) Whether the Plaintiff can satisfy his burden of showing a substantial likelihood of success on the merits.

## II. SUMMARY OF THE FACTS

The plaintiff is employed by the Town of Charlestown and the Charlestown Police Department as a police officer. In January 2016, the plaintiff informed his employer that he has a brain injury from boxing and a learning disability due to his attention deficit hyperactivity disorder (ADHD) which limits his reading and comprehension skills.[1] The plaintiff requested accommodations by his employer to receive additional time to review the rules and regulations manual that the Charlestown Police Department requires all the police officers to review. Upon

---

[1] Plaintiff notified Lt. Paliotta that he had ADHD and brain damage from boxing that affects his short term memory. In Dr. Paul Malloy's Independent Neuropsychological Evaluation report on plaintiff, Dr. Malloy found no sign of brain injury or ADHD.

1

the recommendation by legal counsel, the Town informed the plaintiff that he will not be allowed to return to work until he provides the Town with a physician's certificate stating his diagnoses, prognosis and whether or not he is fit for duty.  Plaintiff stayed out of work on paid administrative leave pending a fitness for duty examination from January 29, 2016 until end of March 2016, when the town received the physician's certificate stating plaintiff's diagnosis. On March 28, 2016, the Town asked the plaintiff to return to the office to complete reviewing the remaining policies in the manual in order for plaintiff to return to duty.  On April 5, 2016, the plaintiff finished reviewing the policies and returned to work on his regular shift assignment.

     Plaintiff worked from early April until early May 2016 when Attorney Edward Roy delivered the IOD complaint form on behalf of the plaintiff. The plaintiff alleges that his direct supervisor retaliated against him for requesting accommodations and for that reason, he was unable to work. On or about May 23, 2016, the Town received a complaint from the Rhode Island Commission for Human Rights on behalf of the plaintiff for the defendants' alleged retaliation to plaintiff's request for accommodation to review the police department policies. Since May 2016, plaintiff has been on sick, vacation and personal leave, and on September 16, 2016, plaintiff exhausted all his paid leave.  Currently, the plaintiff remains on the health insurance plan he received through the Charlestown Police Department and will remain on the health insurance through October 31, 2016.

     The plaintiff claims he will suffer irreparable harm if his employment, pay and medical benefits are terminated because he will suffer a damaged reputation within the law enforcement community and will be subjected to unknown potential injuries if his current mental health treatment regimen will be interrupted.

     Dr. Paul Malloy evaluated the plaintiff in in March 2016, finding that the plaintiff did not

meet the criteria for ADHD, but did meet the criteria for a verbal processing disorder. In early September, the plaintiff's primary care physician Dr. Barratt reported his evaluations on the plaintiff from May 17, 2016 through August 2, 2016, and diagnosed the plaintiff with work related post-traumatic stress disorder (PTSD), anxiety and stress.[2] Dr. Barratt prescribed the plaintiff medication for his PTSD and anxiety, advised the plaintiff to see a psychiatrist, and considered plaintiff disabled.

### III. LEGAL STANDARD FOR GRANTING A PRELIMINARY INJUNCTION

In order to grant a preliminary injunction, the moving party has the burden of persuasion to demonstrate by a clear showing the following four elements: "(1) that he has a substantial likelihood of success on the merits; (2) that he faces a significant risk of irreparable harm if the injunction is denied; (3) that the harm he will suffer outweighs any harm to defendants if the injunction is granted; and (4) that the granting of prompt injunctive relief will promote (or, at least, not denigrate) the public interest." Robinson v. Wall, 2011 U.S. Dist. LEXIS 68320 *6 (D.R.I. May 11, 2011); see also Mazurek v. Armstrong, 520 U.S. 968, 972 (U.S. 1997).

### IV. ARGUMENT

#### A. The plaintiff cannot satisfy the irreparable harm element

##### 1. The irreparable harm element is not met by the interruption or termination of plaintiff's medical benefits

Plaintiff claims that upon termination of his health care benefits, there is a strong likelihood that his current mental health treatment regimen will be interrupted, subjecting him to unknown potential injuries. The interruption in health care from losing health care benefits does not constitute irreparable harm. Belzer v. Am. Airlines, No. 2:06-cv-2884-GEB-GGH, 2007 U.S. Dist. LEXIS 19225, at *6 (E.D. Cal. Mar. 5, 2007) (loss of health benefits does not ordinarily

---

[2] Dr. Barratt is a medical internal physician. Prior to Dr. Barratt's diagnosis, Plaintiff was seen by two other doctors and not diagnosed with PTSD until plaintiff's visit with a clinical nurse specialist.

constitute irreparable harm). For example, switching from one doctor to another doctor does not constitute the kind of interruption in medical care that rises to the level of irreparable harm. Adams v. Freedom Forge Corp., 204 F.3d 475, 491 (3d Cir. Pa. 2000); see also Gonzalez v. Chasen, 506 F. Supp. 990, 998-999 (D.P.R. 1980). The plaintiff must present evidence that the doctors available to him under a new plan are in any way inadequate, or the loss of benefits and/ or transfer from one physician to another is medically risky. Adams, 204 F.3d at 491; see also Gonzalez, 506 F. Supp. at 999.

The plaintiff does not specify a strong likelihood that his current mental health treatment regimen will be interrupted for financial reasons. However, even if the plaintiff were to state that his treatment will be interrupted because of monetary factors, the additional costs to pay for health care with the loss of income do not in of itself constitute the kind of heavy financial burden that amounts to irreparable harm. Sampson v. Murray, 415 U.S. 61, 92 (U.S. 1974); see also Adams v. Freedom Forge Corp., 204 F.3d 475, 491 (3d Cir. Pa. 2000). "Insufficiency of savings or difficulty in immediately obtaining other employment- external factors or difficulties in immediately obtaining other employment- external factors common to most discharged employees are not attributable to any unusual actions relating to the discharge itself- will not support a finding of irreparable injury, however severely they may affect a particular individual." Gately v. Massachusetts, 2 F.3d 1221, 1232 (1st Cir. M.A. 1993).

In order for the financial costs to amount to irreparable harm, the additional payments the plaintiff will be required to pay for medical treatment must create such a heavy burden that plaintiff will be forced to forgo medical treatment or other necessities such as food or shelter. Soldevilla v. Secretary of Agriculture, 512 F.2d 427, 430 (1st Cir. P.R. 1975). The plaintiff must testify to particular facts to explain the extent of his financial burden as the risk of irreparable

harm must not be speculative.  Id.; see also Taylor v. Conn. Dep't of Corr., 2005 U.S. Dist. LEXIS 23762, *4 (D.R.I. Sept. 20, 2005).

In the instant case, the plaintiff fails to prove how the interruption of his mental health treatment will cause irreparable harm. First, the plaintiff will not be losing access to health insurance and, or medical providers because he has COBRA rights which provide "disabled" individuals with extended coverage for 18-36 months. Even if plaintiff were to be treated by new doctors, plaintiff shows no affirmative evidence that switching doctors is medically risky or that the doctors under a new medical plan will be inadequate to treat his mental health condition.

In regards to whether the financial burden amounts to irreparable harm, the plaintiff fails to provide specific facts about how he will incur significantly high costs in his mental health treatment for his ADHD and PSTD upon the termination of his current health insurance on October 31, 2016.   Plaintiff currently pays a portion for his health benefits, and if he chooses to exercise his COBRA rights, he will simply have to pay higher monthly premiums.  Plaintiff fails to provide facts to show how his current medical treatment bears such a severe financial burden or that he is of such low income, the loss of money through the loss of his current health insurance will require him to forego necessities such as food and medical treatment. Insufficient savings or difficulties in the plaintiff obtaining other employment are common to most discharged employees, and no matter how severely they may affect the plaintiff, such factors do not support a finding of irreparable injury. Since the date of plaintiff's paid leave, plaintiff has purchased high priced miscellaneous items that at market price cover the costs for more than one or two months of COBRA premiums.[3]

---

[3] Upon information and belief, since the start of plaintiff's paid sick leave in January 2016 to present, plaintiff has traveled to Florida, Connecticut and Las Vegas for body building competitions and day clubs, purchased a BMW, new tires for his BMW, paid for home renovations with custom made materials, traveled to New York for Graston treatment for bodybuilding, and as of September 16th purchased an I-phone 7 plus.

Given these facts, the plaintiff has failed to show that the interruption of his mental health regimen will amount to extraordinary harm as to satisfy the irreparable harm element.

**2. Irreparable harm element is not met with the exercise of an adequate procedural remedy**

Relatedly, Speck cannot show irreparable harm because he has already invoked an adequate procedural vehicle to bring his monetary damages claim.  Article 33 of the collective bargaining agreement between the Town and the police union requires that all denials of injured-on-duty pay be resolved through arbitration.  See Collective Bargaining Agreement Between Town and the Washington County Fraternal Order of Police, Lodge #40.

Speck's request to arbitrate is an adequate remedy at law, rendering injunctive relief inappropriate.  See Patterson v. Rhode Island, No. 10-136ML, 2011 U.S. Dist. LEXIS 56606, at *23 (D.R.I. Apr. 22, 2011); In re State Emps.' Unions, 587 A.2d 919, 926-27 (R.I. 1991).  Unless the arbitration process is a "nullity," that is, "the decision of the arbitrator in the union's favor would be but an empty victory," the availability of arbitration is an adequate legal remedy that warrants denial of injunctive relief, particularly where the "arbitrator can order a panoply of appropriate remedies, including back pay."  In re State Emps.' Unions, 587 A.2d 919, 926-27 (R.I. 1991); see also IBEW, Local 1269 v. YP Adver. & Publ'g, LLC, No. C 16-00767 JSW, 2016 U.S. Dist. LEXIS 22036, at *4 (N.D. Cal. Feb. 23, 2016).

Speck has invoked the arbitration provision in the collective bargaining agreement and his claim will be heard by a neutral arbitrator on January 23, 2017 – a date mutually selected by the Town and the Union.  If he prevails at arbitration, he will be made whole and receive back pay and benefits.  There is no indication that money damages will be inadequate to compensate Speck for his alleged harm; to the contrary, Speck can be made whole if he prevails in

arbitration. See Commc'ns Workers of Am. v. Verizon Communs., Inc., 255 F. Supp. 2d 479, 485 (E.D. Pa. 2003); see also In re State Emps.' Unions, 587 A.2d 919, 926-27 (R.I. 1991).

Under these circumstances, Speck has not demonstrated irreparable injury for which he has no adequate remedy at law.

**B. The plaintiff cannot show a substantial likelihood of success on the merits**

Plaintiff claims he can show a substantial likelihood of success on the merits. "If the moving party cannot demonstrate that he is likely to succeed on the merit, the remaining factors become matters of idle curiosity." Weaver v. Henderson, 984 F.2d 11, 12 (1st Cir. 1993). The fact that the preliminary injunction stage arrives at the early stages of litigation does not provide justification for the Court to speculate as to the eventual outcome. Narragansett Indian Tribe v. Guilbert, 934 F.2d 4, 6 (1st Cir. R.I. 1991) ("likelihood of success cannot be woven from the gossamer threads of speculation and surmise").

In the instance case, plaintiff alleges a substantial likelihood of prevailing on the merits on the following two claims: 1) plaintiff experienced retaliation and discrimination as a result of requesting and receiving an accommodation for his ADHD and 2) plaintiff's pending termination is retaliation for his having filed a claim of discrimination with the Rhode Island Commission for Human Rights. In support of the instant motion, plaintiff claims he provides a clear showing that 1) he was engaged in protected conduct; 2) experienced an adverse employment action; and 3) a causal relationship exists between the protected conduct and the adverse employment action. In regards to the third prong, plaintiff claims his request for accommodations for his ADHD and his HRC filing were the basis for the defendant Town of Charlestown's notice to plaintiff that his pay and benefits may be terminated upon notice that plaintiff will not be returning to work until October 1, 2016. Defendants submit that plaintiff cannot show a causal relationship between

plaintiff's request for accommodations for his ADHD and subsequent filing with the HRC, and the threatened termination of plaintiff's employment, pay and benefits.

1. **A narrow look at the timing of events without looking at the larger sequence of events which undercuts the claim of causation is insufficient to satisfy the causal relationship prong to show a substantial likelihood of prevailing on the merits.**

Looking at the plaintiff's retaliation claim, defendants submit that plaintiff fails to prove a substantial likelihood of success by failing to prove the third prong: that the Town defendants' actions against plaintiff were causally connected to plaintiff's protected activities. Plaintiff claims the timing between the Charlestown Police Department grant of the plaintiff "suspension with pay," the plaintiff's filing a complaint with the HRC, and the plaintiff's subsequent threatened termination of his salary and benefits show the causal connection. The First Circuit established that chronological proximity does not by itself establish causality, particularly if "[t]he larger picture undercuts any claim of causation." Soileau v. Guilford of Me. Inc., 105 F.3d 12, 16 (1st Cir. 1997); See also Freadman v. Metro. Prop. & Cas. Ins. Co., 484 F.3d 91, 101 (1st Cir. R.I. 2007) "Timing may bear on the question of causation in a retaliation claim, but we have also warned that a narrow focus on timing may ignore the larger sequence of events and also the larger truth." Soileau, 105 F.3d at 16.

Here, the plaintiff has ignored the larger sequence of events leading up to the threatened termination of his salary and benefits. Between the timing of the plaintiff's administrative leave pending a fitness for duty examination starting on January 29, 2016, plaintiff's filing of the HRC complaint on May 2, 2016, and the threatened termination of plaintiff's salary and benefits on September 2, 2016, plaintiff has been in and out of work, exhausting all of his paid vacation and sick leave. The plaintiff alleges the threatened termination for his employment is because of the filing of his HRC claim against the defendant rather than his exhaustion of paid leave. The

plaintiff fails to provide the larger sequence of events in which he has been absent from work claiming it is due to his alleged disability despite traveling and participating in body building competitions across the country.  As the First Circuit emphasizes, "chronological proximity does not by itself establish causality, particularly if the larger picture undercuts any claim of causation."

Plaintiff has also ignored  the Collective Bargaining Agreement provisions on continuation of health insurance coverage Speck's request for continuation of health insurance coverage after exhausting his sick and other paid leave is inconsistent with the collective bargaining agreement between the Town and Speck's Union.  Article 28 of the collective bargaining agreement states that, upon exhaustion of all paid sick and vacation leave, police officers may take up to six months of unpaid leave "for reason of personal illness, . . . . [or] disability . . . ."  (CBA at § 28.1).  The Town and the Union have agreed that the Employee remains responsible for the cost of continued health insurance during such leave:  "The cost to maintain Blue Cross or comparable coverage is to be remitted to the Town by the employee(s) during the time of his absence from the Police Department."  (CBA at § 28.3).  To take advantage of this benefit, however, the police officer must request it, and the Town Administrator must approve the request.  At present, Speck has not requested such unpaid leave from the Town.

1. **The Injured on Duty standard is heightened for police officers to show a likelihood of success on the merits for work related emotional stress.**

To the extent Speck is asking the Town to pay injured-on-duty benefits, there is a legal basis under R.I. Gen. Laws § 45-19-1, but the facts of Speck's case demonstrate he has no reasonable likelihood of success on the merits.  R.I. Gen. Laws § 45-19-1 allows police officers who are "wholly or partially incapacitated by reason of injuries received or sickness contracted

9

in the performance of his or her duties" to collect tax-free salary and benefits "during the period of the incapacity."

It is axiomatic that police officers are not eggshell plaintiffs when it comes to emotional stress. See, e.g., Jordan v. City of Union City, No. 15-12038, 2016 U.S. App. LEXIS 5342, at *6 (11th Cir. Mar. 23, 2016) (plaintiff "had not shown he could perform the essential functions of the police-officer position, such as handling high-stress and emergency situations in a cool, calm, and collected manner"). Police officers are put in mentally stressful positions daily; it is the very nature of the job. To earn the right to injured-on-duty pay under § 45-19-1, Speck must prove "the stress [he experienced] was the result of emotional strain and tension of greater dimension than the day-to-day emotional strain and tension which all employees experience." Frost v. City of Newport, 706 A.2d 1354, 1355 (R.I. 1998) (affirming arbitration decision). Here, Speck's alleged stress arose out of the Town *granting* his request for an accommodation for his alleged disability – *i.e.*, bringing him back to the station and allowing him the opportunity to read all required policies at his own pace. This simply does not amount to stress of a "greater dimension" than the high-stress situations other officers face in the line of duty. Indeed, Speck alleges that he is incapacitated from working due to stress and PTSD, yet he has continued to not only train for, but also participate in high-stress, championship body-building competitions throughout his leave of absence. Like in Frost, Speck's supposed injury does not move the meter as the type of emotional stress that will trigger entitlement to a tax-free disability benefits. Frost, at 1355. As such, Speck has no likelihood of success on his injured on duty claim under R.I. Gen. Laws § 45-19-1.

Given these facts, the plaintiff cannot satisfy his burden of showing a substantial likelihood of success on the merits.

10

**V. CONCLUSION**

       For all these reasons, as well as those that may be raised at hearing, defendants respectfully request that plaintiff's Motion for a Preliminary Injunction be denied.

| Defendants, | Defendants, |
| --- | --- |
| By their attorneys, | By their attorneys, |
| | |
| */s/Marc DeSisto* | */s/Timothy C. Cavazza* |
| Marc DeSisto, Esq. (#2757) | Timothy C. Cavazza, Esq. (#2757) |
| DESISTO LAW LLC | WHELAN, CORRENTE, FLANDERS, |
| 211 Angell Street | KINDER & SIKET LLP |
| Providence, RI 02906 | 100 Westminster Street, Suite 710 |
| 401-272-4442 | Providence, RI 02903 |
| 401-272-9937 – fax | 401-270-0364 |
| marc@desistolaw.com | 401- 270-3760 – fax |
| | tcavazza@whelancorrente.com |

### CERTIFICATION OF SERVICE

       I hereby certify that the within document has been electronically filed with the Court on this 7th day of October, 2016 and is available for viewing and downloading from the ECF system. Service on the counsel of record, as listed below, will be effectuated by electronic means:

    Edward C. Roy, Esq.
    Edward_Roy@hotmail.com

                                      */s/Marc DeSisto*
                                      Marc DeSisto